IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

FILED IN CHAMBERS
THOMAS W. THRASH JR.
U.S.D.C. Atlanta

OCT 21 2005

LUTHER D. THOMAS, Clerk
By: /s/ Deputy Clerk

| | | |
|---|---|---|
| JODY ALLEN SHEA,<br>Inmate # 99204457,<br>   Plaintiff, | :: <br> :: <br> :: <br> :: | CIVIL ACTION NO.<br>1:05-CV-2401-TWT |
| v. | :: <br> :: | |
| BUTCH CONWAY, Sheriff, et al.,<br>   Defendants. | :: <br> :: | PRISONER CIVIL RIGHTS<br>42 U.S.C. § 1983 |

### ORDER AND OPINION

Plaintiff has been granted <u>in forma pauperis</u> status in this 42 U.S.C. § 1983 action, and the matter is now before the Court for a 28 U.S.C. § 1915A screening.

### 28 U.S.C. § 1915A Review

Pursuant to 28 U.S.C. § 1915A, a federal court is required to conduct an initial screening of a prisoner complaint seeking redress from a governmental entity, or an officer or employee thereof, to determine whether the action (1) is frivolous, malicious, or fails to state a claim on which relief may be granted, or (2) seeks monetary relief against a defendant who is immune from such relief. A claim is frivolous when it "has little or no chance of success," i.e., when it appears "from the face of the complaint that the factual allegations are clearly baseless or that the legal theories are indisputably meritless." <u>Carroll v. Gross</u>, 984 F.2d 392, 393 (11th Cir. 1993). A complaint fails to state a claim when it appears beyond doubt that the

AO 72A
(Rev.8/82)

plaintiff could prove no set of facts that would entitle him to relief. See Brower v. County of Inyo, 489 U.S. 593, 598 (1989).

In the instant civil rights action, Plaintiff sues Gwinnett County Sheriff Butch Conway; D. Gebhardt, the Medical Supervisor at the Gwinnett County Detention Center (GCDC); Dr. Rizvi; and fourteen named officers of the Gwinnett County Sheriff's Department, "among others." [Doc. 1 at 1.] Plaintiff states that he fell down a flight of stairs at the GCDC on November 28, 2004, causing serious injuries to his head, back, neck, wrists, and ankle. [Id. ¶ IV.] Plaintiff alleges that he was charged with attempted escape and placed on "supermax status." He claims that, while there, he submitted several medical request slips that were ignored by the guards. He states that a nurse told him six weeks later that medical had received none of those slips, which led him "to believe the deputies were simply throwing them away as I filed." Plaintiff claims that he healed on his own from the puncture wounds covering his body as a result of his fall, "including no skin on my hands." He also appears to claim that the hospital where he was taken after his fall provided "no medical treatment." [Id. ¶ IV & attach. at 1.]

Plaintiff claims further that after Dr. Rizvi prescribed a soft shoe for his bad back, "over one dozen deputies went on to refuse me my shoes as ordered by my Doctor," although he names only Deputy Rutledge and Corporal Lavander

2

AO 72A
(Rev.8/82)

specifically. Plaintiff alleges that Corporal Lavander and Deputies Griffith and Davis threatened retaliation if Plaintiff persisted in filing grievances for his shoes or for other reasons. [Id. attach. at 2-3, 7.] Plaintiff claims that there is up to a three-week delay between submitting a request for medical attention and actually receiving it. He alleges that he suffers from a periodic, painful condition in the genital area for which he has been denied treatment "for the entire phase of this oozing, bleeding outbreak," and for which he only recently has been given any form of treatment. [Id. attach. at 6-7.]

Plaintiff also claims that he has been denied meaningful access to the law library "to prepare myself for trial here in the State of Georgia, as well as to research legal material for my out of state criminal charges in which I do not have legal representation, as well as [for] family and probate court proceedings." [Id. attach. at 1.] Plaintiff claims that Deputy Lana Rutledge at first refused his written requests for legal materials until a shift sergeant ordered her to provide them to Plaintiff, although Deputy Rutledge allegedly continues to deny his requests for information regarding court addresses. [Id. attach. at 2.]

Plaintiff claims that he has been denied the right to attend religious services or Bible study sessions for the stated reason that he is an escape risk, although Plaintiff states that "well over 100 inmates with escape cases" attend these services regularly.

3

Plaintiff also claims that his wedding band, crucifix, necklace, and rosary have been taken from him. Plaintiff further claims that, as an indigent, he is allowed only limited outgoing mail (8 stamps per month). [Id. attach. at 4-5.]

Moreover, Plaintiff claims that when he is taken to court he is required to remain chained for as many as eight hours without being given anything to eat or being able to use the bathroom. [Id. attach. at 5-6.] Plaintiff alleges that he is forced to sleep on a worn out "mat" in his cell, situated between two occupied bunks, causing him to experience "excruciating pain" from his back injury and requiring him "to take high doses of unnecessary pain medication." Plaintiff alleges to have witnessed the beating of other inmates, which has caused him nightmares. Plaintiff also alleges that Deputy Flemming and "several other deputies" body slammed him onto the concrete floor for complaining about the lack of medical attention and then placed him nude into an ice-cold cell with no medical treatment. [Id. attach. at 8-9.]

Plaintiff seeks an Order requiring that Sheriff Conway do the following: give him the prescribed sneakers for his back condition; allow him to attend religious services; return his wedding band, rosary, and crucifix; feed him and other inmates while at court and not require him to be in full chains with other prisoners who are not chained; provide indigent inmates unlimited outgoing legal mail; improve the medical

4

AO 72A
(Rev.8/82)

procedures to provide a quicker response to medical problems; and order his deputies to stop threatening him. [Id. ¶ V.] Plaintiff also seeks $5 million in damages. [Id.]

To state a claim for relief under 42 U.S.C. § 1983, a plaintiff must allege that a defendant's act or omission under color of state law deprived him of a right, privilege, or immunity secured by the Constitution or laws of the United States. See Hale v. Tallapoosa County, 50 F.3d 1579, 1582 (11th Cir. 1995). If a plaintiff fails to satisfy these requirements or to provide factual allegations supporting a viable cause of action, the claim is subject to dismissal. See Chappell v. Rich, 340 F.3d 1279, 1283-84 (11th Cir. 2003) (affirming the district court's dismissal of a § 1983 complaint because plaintiffs' factual allegations were insufficient to support the alleged constitutional violation), cert. denied, 540 U.S. 1219 (2004).

### Eighth Amendment claims

For a plaintiff to make out a claim under the Eighth Amendment for cruel and unusual punishment, "there must be, objectively speaking, conduct by public officials sufficiently serious to constitute a cruel or unusual deprivation–one denying the minimal civilized measure of life's necessities. . . . [and] a subjective intent by the public officials involved to use the sufficiently serious deprivation in order to punish." Taylor v. Adams, 221 F.3d 1254, 1257 (11th Cir. 2000) (citations and internal quotations omitted). "The subjective component of Eighth Amendment jurisprudence

5

requires a showing that the defendants were wanton in their actions, as opposed to merely negligent." Wilson v. Seiter, 501 U.S. 294, 302, 111 S. Ct. 2321, 2326, 115 L. Ed. 2d 271 (1991). As explained below, the Eighth Amendment prohibits the use of excessive force against prisoners, deliberate indifference to a prisoner's serious medical needs, and inhumane conditions of confinement.

In determining whether the use of force against a prisoner has violated the Eighth Amendment, a court must weigh the following factors: (1) the need for the use of force, (2) the relationship between the need and the amount of force, (3) the threat that the prison official reasonably perceived, (4) the efforts made to temper the severity of the force used, and (5) the extent of the prisoner's injuries. Hudson v. MacMillan, 503 U.S. 1, 7, 112 S. Ct. 995, 999, 117 L. Ed. 2d 156 (1992); see also Skrtich v. Thornton, 280 F.3d 1295, 1304 (11th Cir. 2002) (noting that "[t]he law of excessive force in this country is that a prisoner cannot be subjected to gratuitous or disproportionate force that has no object but to inflict pain"). The Court cannot conclude at this time that Plaintiff's allegation that he was body slammed does not make out an Eighth Amendment cause of action based on the use of excessive force.

The Supreme Court has recognized "the government's obligation to provide medical care for those whom it is punishing by incarceration. An inmate must rely on prison authorities to treat his medical needs . . . .[D]enial of medical care may result

6

in [unnecessary] pain and suffering . . . . [that] is inconsistent" with the view that it is "just that the public be required to care for the prisoner, who cannot by reason of the deprivation of his liberty, care for himself." Estelle v. Gamble, 429 U.S. 97, 103-04 (1976) (citations and internal quotations omitted).

> To show an objectively serious deprivation [of needed medical care], it is necessary to demonstrate, first, an objectively serious medical need, one that, if left unattended, poses a substantial risk of serious harm, and second, that the response made by public officials to that need was poor enough to constitute an unnecessary and wanton infliction of pain, and not merely accidental inadequacy, negligence in diagnosis or treatment, or even medical malpractice actionable under state law.

Taylor, 221 F.3d at 1258 (citations, footnotes, and internal quotations omitted). See also Hill v. Dekalb Regional Youth Detention Ctr., 40 F.3d 1176, 1187 (11th Cir. 1994) (noting that "a 'serious' medical need is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention").

Delay in providing medical treatment may rise to the level of deliberate indifference to a serious medical need. See id. (stating that "[d]elay in access to medical attention can violate the Eighth Amendment when it is tantamount to unnecessary and wanton infliction of pain") (citation and internal quotations omitted); Brown v. Hughes, 894 F.2d 1533, 1538 (11th Cir. 1990) (stating that "a deliberate delay on the order of hours in providing care for a serious and painful broken foot is

7

sufficient to state a constitutional claim"). Plaintiff has alleged various instances of deliberate indifference to his serious medical needs, including the alleged failure to provide needed medical care after his fall, the alleged failure to provide his prescribed soft shoes, and the alleged failure to provide timely treatment for his periodic genital condition. The Court cannot conclude that Plaintiff has failed to make out an Eighth Amendment claim in this regard.

Under the Eighth Amendment, "routine discomfort is part of the penalty that criminal offenders pay for their offenses against society," and "extreme deprivations are required to make out a conditions-of-confinement claim." Hudson v. McMillian, 503 U.S. 1, 9 (1992) (internal quotations omitted). See also Wilson v. Seiter, 501 U.S. 294, 298 (1991) (noting that "[t]he Constitution . . . does not mandate comfortable prisons") (internal quotations omitted). On the other hand, in order to prevail on an Eighth Amendment challenge to his conditions of confinement, a prisoner "need not await a tragic event before seeking relief, [but] he must at the very least show that a condition of his confinement poses an unreasonable risk of serious damage to his future health or safety." Chandler v. Crosby, 379 F.3d 1278, 1289 (11th Cir. 2004) (citation and internal quotations omitted). Accordingly, the Court cannot conclude that Plaintiff has failed to state a claim based on the harm he allegedly has suffered as a result of being required to sleep on a mat on the floor for at least four months.

8

**Access to the courts claim**

"[T]he fundamental constitutional right of access to the courts requires prison authorities to assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law." Bounds v. Smith, 430 U.S. 817, 828 (1977). However, access to a law library "is not required of prisons, but rather is one way of assuring the constitutional right of access to the courts. The mere inability of a prisoner to access the law library is not, in itself, an unconstitutional impediment." Akins v. United States, 204 F.3d 1086, 1090 (11th Cir. 2000) (citation omitted); see also Cruz v. Hauck, 515 F.2d 322, 331 (5th Cir. 1975) (stating that "[a]ccess to legal materials is but one source, albeit an important one, of providing an adequate pathway to the courts," and "access to the courts may be satisfied either by availability of legal materials, by counsel, or by any other appropriate device of the State").

Moreover, a viable claim of the denial of access to the courts requires a showing of "actual injury regarding prospective or existing litigation," such as "missing filing deadlines or being prevented from presenting claims" while "in the pursuit of specific types of nonfrivolous cases: direct or collateral attacks on sentences and challenges to conditions of confinement." Wilson v. Blankenship, 163 F.3d 1284, 1290 & n.10 (11th Cir. 1998); see also Lewis v. Casey, 518 U.S. 343, 369 (1996) (stating that the

9

Supreme Court's own precedents, including <u>Bounds</u>, do "<u>not</u> establish a freestanding right of access to the courts, meaningful or otherwise") (emphasis in original). Plaintiff alleges that he is facing criminal trial without the benefit of counsel. Although the Court finds it difficult to credit such an allegation, it declines to conclude at this time that Plaintiff could prove no set of facts to support his claim that he has been denied his constitutional right of access to the courts.

**First Amendment claims**

Retaliation or threatened retaliation for filing prison grievances implicates a prisoner's First Amendment rights. See <u>Wildberger v. Bracknell</u>, 869 F.2d 1467, 1467-68 (11th Cir. 1989) (reversing a grant of summary judgment against a prisoner who had allegedly "been disciplined by being placed in segregation in retaliation for his having filed several grievances," and stating that "[i]t seems clear that if appellant is able to establish that his discipline was the result of his having filed a grievance concerning the conditions of his imprisonment, he will have raised a [First Amendment] issue").

Furthermore, "[i]nmates clearly retain protections afforded by the First Amendment, including its directive that no law shall prohibit the free exercise of religion. . . ., [although] lawful incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations

10

underlying our penal system." O'Lone v. Estate of Shabazz, 482 U.S. 342, 348 (1987) (citation and internal quotations omitted). The Court cannot conclude at this time that Plaintiff has failed to state a claim based on the alleged threats of retaliation for filing prison grievances or the alleged denial of access to religious services and artifacts.

This Court finds that Plaintiff has sufficiently alleged the various causes of action outlined above.[1] Accordingly, in light of the allegations presented, and in deference to Plaintiff's pro se status, this Court cannot find that Plaintiff's action is entirely frivolous pursuant to 28 U.S.C. § 1915A. Therefore, **IT IS ORDERED** that his claims be allowed to **PROCEED** as in any other civil action. Plaintiff's September 21, 2005, motion for one week's time to prepare and file an amendment to his complaint [Doc. 3] is **GRANTED** nunc pro tunc.

Although Plaintiff has named at least 17 Defendants in the caption of his complaint, he has alleged violations by only 5 of those Defendants, as noted above, with implied causes of action against Sheriff Conway and Medical Supervisor Gebhardt. Accordingly, **IT IS FURTHER ORDERED** that the following named

---

[1]This Court notes that, although Plaintiff admits that he did not exhaust his administrative remedies before filing the instant lawsuit, he alleges that he has been denied the ability to do so. [Doc. 5 at 2.] Accordingly, the Court cannot conclude at this time that Plaintiff has failed to satisfy the requirement of 42 U.S.C. § 1997e(a) that a prisoner exhaust "such administrative remedies as are available" before filing a lawsuit with respect to prison conditions.

Defendants be **DISMISSED** from this action: Deputy Sheriff Phillips, Deputy Sheriff Lunt, Dr. Rizvi, Sgt. M. Tidwell, Major W. Sheppard, Sgt. Locklear, Captain Sims, Sgt. Smith, Corporal Edwards, and Corporal Moore.

The Clerk is hereby **DIRECTED** to send Plaintiff a USM 285 form and summons for each remaining Defendant named in the complaint, along with an initial disclosures form. Plaintiff is **DIRECTED** to complete a USM 285 form and summons for each Defendant, complete the initial disclosures form, and return all of the forms to the Clerk of Court within twenty (20) days of the entry date of this Order. Plaintiff is warned that failure to comply in a timely manner could result in the dismissal of this civil action. The Clerk is **DIRECTED** to resubmit this action to the undersigned if Plaintiff fails to comply.

Upon receipt of the forms, the Clerk is **DIRECTED** to prepare a service waiver package for each Defendant. The service waiver package must include, for each Defendant, two (2) Notice of Lawsuit and Request for Waiver of Service of Summons forms (prepared by the Clerk), two (2) Waiver of Service of Summons forms (prepared by the Clerk), an envelope addressed to the Clerk of Court with adequate first class postage for use by each Defendant for return of the waiver form, one (1) copy of the complaint, one (1) copy of the initial disclosures form, and one (1) copy of this Order. The Clerk shall retain the USM 285 form and summons for each Defendant.

AO 72A
(Rev.8/82)

Upon completion of a service waiver package for each Defendant, the Clerk is **DIRECTED** to complete the lower portion of the Notice of Lawsuit and Request for Waiver form and to mail a service waiver package to each Defendant. Defendants have a duty to avoid unnecessary costs of serving the summons. If a Defendant fails to comply with the request for waiver of service, that Defendant must bear the costs of personal service unless good cause can be shown for failure to return the Waiver of Service form.

In the event a Defendant does not return the Waiver of Service form to the Clerk of Court within thirty-five (35) days following the date the service waiver package was mailed, the Clerk is **DIRECTED** to prepare and transmit to the U.S. Marshal's Service a service package for each Defendant who failed to return the waiver form. The service package must include the USM 285 form, the summons, and one (1) copy of the complaint. Upon receipt of the service package(s), the U.S. Marshal's Service is **DIRECTED** to personally serve each Defendant who failed to waive service. The executed waiver form or the completed USM 285 form shall be filed with the Clerk.

Plaintiff is **DIRECTED** to serve upon each Defendant or each Defendant's counsel a copy of every additional pleading or other document which is filed with the Clerk of the Court. Each pleading or other document filed with the Clerk shall include a certificate stating the date on which an accurate copy of that paper was mailed to

each Defendant or each Defendant's counsel. This Court shall disregard any submitted papers which have not been properly filed with the Clerk or which do not include a certificate of service.

Plaintiff is also **REQUIRED** to **KEEP** the Court and each Defendant advised of his current address at all times during the pendency of this action. Plaintiff is admonished that the failure to do so may result in the dismissal of this action.

**IT IS SO ORDERED** this _20_ day of _October_, 2005.

_____
THOMAS W. THRASH, JR.
UNITED STATES DISTRICT JUDGE

14